Milligan, J.,
delivered the opinion of the Court.
This is a hill, in the nature of a cross hill, to enforce tlie specific performance of a contract. The complainant sold to the defendant in the original bill, a saw mill, one acre of land, and a yoke of work cattle, for which the latter agreed to pay bim $800, and all tbe debts be might owe in Jackson County. Three hundred and odd dollars, were paid in a settlement between the parties, at the date of the contract. No *307 note, or other obligation, was given, to secure the re-remainder, and this bill is brought to enforce payment.
The defendant in the original bill, files his answer in the nature of a cross bill, in which he denies the equities set up and relied on in the bill. And, in addition thereto, he charges that the contract was a gross fraud and misrepresentation; that the machinery was worthless, the contract price exorbitant, and that the complainant had failed to keep and perform his part of the agreement. Harris, the defendant in the cross bill, answers, and specifically denies these allegations.
The proof is voluminous, and much of it wholly inapplicable to the real question in controversy. But enough appears to convince the mind, that Harris, by a well, devised scheme of studied artifice and misrepresentations, perpetrated a gross fraud upon Smith. He is a mechanic, and the builder of the saw mill, and the law holds him, as such, to a strict accountability for his representations, whether made in. ignorance, or with knowledge of the real condition of the machinery,, about which he speaks. He repeatedly represented that the mill would cut from eight hundred to one thousand feet of lumber in a day. The proof shows that it could not be made to cut one-half of that amount; and that it was so inartificially constructed, that it would cost more than could be realized from it, to keep it in repair. In fact, it appears to have •been, as a piece of machinery, totally worthless. Many .of the witnesses say they would not keep it in repair for it; and others, that it was worth but little more than the irons upon it. Harris, as it appears in the *308 record, said he built it to sell. And failing, in a direct transaction, to dispose of it to Smith, who seems to have been his marked victim, he combined and confederated with one Eeed, his accomplice in the fraud, and personal enemy to Smith, to whom, after a formal examination of the property, he made a “sham” transfer of the mill, for the same sum for which he after-wards sold it to Smith. The mill stood within one hundred and fifty or two hundred yards of Smith’s house; and the fact that his personal enemy was to obtain a lodgment at his own door, doubtless, furnished another and a strong inducement to Smith, ■to complete the purchase. The “sham” contract between Harris and Eeed, was cancelled, and Smith, on the same terms, closed the agreement.
'The whole facts of the case, although artfully interwoven, leave no doubt resting on the inind, that from beginning to end, it was the purpose of Harris, by artifice and misrepresentation, to inveigle Smith into the transaction. Fraud, it is true, must be proven-; it cannot be presumed. But, as this Court has said, in ‘the case of Floyd vs. Goodwin, 8 Yer., 484, 489, it may be gathered more from the eircum--stances attending the transaction, than upon tangible proof. And when made fully to appear, it vitiates all contracts into which it enters; and equity will not only interfere in such cases, to set aside acts done, •hut will, also, if, by fraud, acts have been prevented from 'being .done, interfere, and treat the case exactly as if the acts had been done: Belcher vs. Belcher, 10 Yer., 121.
Affirm the Chancellor’s decree.